## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

SHARON ALSTON,

Defendant.

Criminal Action No.  02-0057 (JDB)

### MEMORANDUM OPINION

On April 13, 2006, defendant moved to stay execution of sentence pending resolution of her appeal of the Court's May 15, 2003 denial of her motion requesting modification and stay of sentence pursuant to 28 U.S.C. § 2255.  The Court entered a limited stay on April 17, 2006 to preserve the status quo pending the government's response and the Court's resolution of the issue, but noted reservations as to the appropriateness of a stay under the circumstances presented.  Now that the matter has been fully briefed, the Court concludes that defendant has failed to meet the criteria set forth in 18 U.S.C. § 3143(b)(1), and thus denies defendant's motion to stay execution of sentence.

### BACKGROUND

The Court briefly recounts the facts giving rise to this motion.  On February 20, 2002, defendant pled guilty to conspiracy to defraud a federal agency of the United States and receipt of stolen property.  On March 6, 2003, defendant was sentenced to a split sentence of 12 months, the first six months to be served by a term of imprisonment followed by six months of home detention and then three years of supervised release.[1]  Three weeks later, on April 1, 2003,

---

[1]  Restitution in the amount of $138,250 was also ordered.

defendant filed an emergency motion pursuant to 28 U.S.C. § 2255 seeking a modification and

stay of sentence based on a then-recent diagnosis of multiple sclerosis, which was unknown to the

Court at the time of sentencing. The Court temporarily stayed the execution of sentence to allow

for full briefing, but later denied defendant's § 2255 motion, explaining that there was no basis in

the record to conclude that defendant's medical condition required that she not be imprisoned and

further finding that the record indicated that FPC Alderson (the facility designated for defendant's

term of imprisonment) would meet her medical needs. Mem. Op. and Order at 5 (May 15, 2003).

   Subsequently, due to inadvertence on the part of the U.S. Probation Office and the Bureau

of Prisons, defendant was not designated or ordered to surrender for nearly three years. In the

interim, defendant had appealed her sentence (D.C. Cir. No. 03-3031), but shortly thereafter

moved to dismiss that direct appeal, which the Court of Appeals granted on July 3, 2003.

However, defendant filed and pursued an appeal of the denial of her § 2255 motion (D.C. Cir. No.

03-3064), which is nearly fully briefed but remains unresolved to date.

   On April 11, 2006, apparently realizing that it had neglected to implement the sentence,

the U.S. Probation Office requested that the Court approve a proposed order directing defendant

to surrender to FPC Alderson on April 19, 2006, and the Court did so. Defendant then filed

another emergency motion seeking a stay of execution of her sentence, this time based on her

pending appeal. The Court once again temporarily stayed the execution of sentence to allow for

full briefing. See Order at 3 (Apr. 17, 2006). The Court directed the parties to address the

requirements for release pending appeal set forth at 18 U.S.C. § 3143(b)(1).

## DISCUSSION

   Whenever a person is found guilty of a federal offense and sentenced to a term of

imprisonment, there is a presumption that the person shall begin serving that sentence,

notwithstanding the filing of an appeal of the conviction or the sentence.  See 18 U.S.C. § 3143(b)(1).  If, however, the defendant can establish by clear and convincing evidence that she is not likely to flee or pose a danger to the community, 18 U.S.C. § 3143(b)(1)(A), *and* also can show that (1) she is appealing for purposes other than delay, (2) the appeal "raises a substantial question of law or fact," and (3) a favorable appellate ruling on that substantial question would likely result in a reversal, an order for a new trial, a sentence that does not include incarceration, or a reduced sentence to a term of imprisonment less than the total of any time already served plus the expected duration of the appeal process, then the sentencing court "shall order the release of the person" pending resolution of the appeal, 18 U.S.C. § 3143(b)(1)(B).[2]

The parties do not dispute that defendant is not likely to flee or pose a danger to the community, or that the defendant has taken the appeal in good faith for a purpose other than delay.  Rather, they focus on defendant's contention that the appeal "raises a substantial question of law or fact" and that a favorable appellate ruling would likely result in a sentence that does not include incarceration (or presumably, one that would result in a term of incarceration less than the expected length of the appeal).  Defendant contends that it is likely that the Court of Appeals will remand this case for resentencing pursuant to United States v. Booker, 543 U.S. 220 (2005), to determine whether the Court would have imposed a different sentence, materially more favorable to defendant, if it had known of the post-Booker sentencing regime, and further contends that the Court is likely to consider her multiple sclerosis condition, supplemented by more recent record evidence, as a factor in reducing her sentence.  As suggested in the Court's previous decisions on

---

[2] There are certain categories of serious offenses to which this rule does not apply, but they are not relevant here.  See 18 U.S.C. § 3143(b)(2) (mandating detention for any person convicted of offenses described in 18 U.S.C. § 3142(f)(1)).

-3-

this matter, neither of these arguments presents a "substantial question of law or fact." Even if the

Court were yet again to consider the circumstances of defendant's multiple sclerosis under an

advisory guidelines regime, the Court would impose the same sentence in the exercise of its

discretion under 18 U.S.C. § 3553(a).

In determining the substantiality of a question of law for purposes of section 3143(b),

courts in this jurisdiction ask whether the question is "a 'close' question or one that very well

could be decided the other way." United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1988)

(citing cases from the First, Second, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits).

Here, defendant's direct appeal of her sentence was dismissed on July 3, 2003, long before

Booker. She now seeks a modification of sentence under the post-Booker advisory guidelines

regime, thus necessarily seeking retroactive application of Booker -- although not framing the

issue as one of retroactivity. However, the broad consensus of authority is that Booker does not

apply retroactively on collateral review to initial § 2255 motions. See United States v. Gentry,

432 F.3d 600, 602-05 & n.4 (5th Cir. 2005) ("we join the several courts of appeals that have held

that Booker does not apply retroactively to initial § 2255 motions," citing cases from the Second,

Third, Sixth, Seventh, Tenth, and Eleventh Circuits); United States v. Morris, 429 F.3d 65, 66-67

(4th Cir. 2005); United States v. Cruz, 423 F.3d 1119, 1120-21 (9th Cir. 2005); Never Misses A

Shot v. United States, 413 F.3d 781, 783-84 (8th Cir. 2005). Although this Circuit has not

decided whether Booker applies retroactively on collateral review to an initial § 2255 motion,[3]

_____

[3] This Circuit has addressed the related question whether a second or successive § 2255
motion based on Booker is permitted under the gatekeeping provision authorizing successive
motions where they contain "a new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously unavailable." See In re Zambrano,
433 F.3d 886, 889 (D.C. Cir. 2006). The court held that the Supreme Court did not make Booker
retroactive to second or successive motions within the meaning of the § 2255 gatekeeping
provision. Id.

-4-

several judges in this district have addressed the issue and concluded that Booker does not have

such retroactive effect. See United States v. Agramonte, 366 F. Supp. 2d 83, 89 (D.D.C. 2005);

United States v. Hawkins, No. 03-390, 2005 WL 1660840, *2 & n.4 (D.D.C. 2005). As aptly

explained in Morris:

> Generally, a new procedural rule does not apply retroactively, and a federal habeas
> petitioner therefore ordinarily cannot rely on such a new rule on collateral review
> if it was handed down after the conviction and sentence became final on direct
> review. An exception to this general rule of nonretroactivity exists when a new
> procedural rule falls within the "small set of watershed rules of criminal procedure
> implicating the fundamental fairness and accuracy of the criminal proceeding."

429 F.3d at 69 (quoting Schriro v. Summerlin, 542 U.S. 348, 352 (2004)). The Morris court then

went on to explain that, although Booker established a new procedural rule, it was not a

watershed rule:

> "Booker does not in the end move any decision from judge to jury, or change the
> burden of persuasion. . . . As a practical matter, then, petitioners' sentences would
> be determined in the same way if they were sentenced today; the only change
> would be the degree of flexibility judges would enjoy in applying the guideline
> system. That is not a 'watershed' change that fundamentally improves the accuracy
> of the criminal process."

Id. at 72 (quoting United States v. McReynolds, 397 F.3d 479, 481 (7th Cir. 2005)). Because the

retroactive application of Booker does not present a "close" question -- indeed, the weight of

authority is uniformly against retroactivity -- the Court concludes that the appeal does not raise a

"substantial question of law or fact." [4]

Defendant's request for a stay of execution of sentence fails for another reason as well.

She has failed to establish that, even if Booker is applied retroactively, the appeal would result in

---

[4] Defendant has not offered any legal authority for the position that Booker may be
applied retroactively to her § 2255 motion. She offers only the government's improvident
statement in its appellate brief -- which it has recently moved to correct -- that a Booker remand
was appropriate in this case. See Government Br. at 1 n.1.

a sentence that does not include incarceration or even a reduced sentence. See 18 U.S.C.

§ 3431(b)(1)(B). Here, defendant hopes to obtain from the court of appeals a Booker remand and

subsequently a modification of sentence through an advisory guidelines regime under which this

Court, in its discretion, would consider her multiple sclerosis as a factor in sentencing. As a

threshold matter, the Court notes that it has previously explained that the circumstances of

defendant's multiple sclerosis do not warrant an adjustment of her sentence:

> The Government has represented unequivocally that defendant's medical needs can
> be met at FPC Alderson, defendant has not disputed that statement, and even
> defendant's representations (for example, that any needed "injections are usually
> self administered") are consistent with a level of care readily furnished in federal
> prison. Nothing in the medical documentation presented by defendant is to the
> contrary. There is simply no evidence that the Bureau of Prisons would be unable
> to furnish any medical care defendant requires.

Mem. Op. and Order at 4-5 (May 15, 2003).

The Court has now reviewed the additional facts alleged and supplemental documents

provided in her exhibits, and concludes that nothing therein alters that finding or otherwise

warrants a modification of the sentence, even under the post-Booker advisory guidelines regime.

Defendant asserts that she has a home health care aide coming to her residence several times a

week to attend to "various personal issues which [she] is unable to attend to as the result of her

medical condition," and that she "virtually never leaves her home unless it is to obtain medical

treatment." See Def.'s Reply Mem. at 4 n.3. Her exhibits also indicate that, on or about

December 20, 2005, she was approved for enrollment in a medical research study at Wake Forest

University involving an experimental drug "not approved for treatment of multiple sclerosis" and

which contained no assurances of effectiveness. Id. Ex. J, Patient Informed Consent Form ("In

this study, you will receive either the active study medication . . . or placebo which is not active . .

. . During the study your multiple sclerosis may become worse, stay the same, or improve."). On

its face, neither defendant's decreased mobility nor outside assistance with "personal issues"

indicates that her medical needs cannot be met at FPC Alderson. As to the medical research

study, it is plainly not necessary to her treatment, in light of the absence of any assurances of

effectiveness of the unapproved drug, and indeed the explicit acknowledgment that defendant

may receive only a placebo.

Defendant also cites the hardship of her incarceration on her two minor children, noting

that she is a single mother and that she will likely lose her place of residence if incarcerated. This

was, however, a matter not covered by her § 2255 motion -- the only subject of her appeal. See

Def.'s Emergency Motion to Vacate, Set Aside or Correct Sentence (Apr. 1, 2003); see also

Notice of Appeal (June 2, 2003). In any event, the Court was advised of defendant's family

circumstances, including her two minor children (twin sons, now approximately 12 years old), at

the original sentencing. See Sentencing Tr. at 39-48 (Mar. 6, 2003). The Court was also advised

of defendant's college-age son, and the fact of some available family support, including a brother

and mother in Roanoake, Virginia. Id. at 52-53. The Court weighed defendant's family

circumstances, including the government's recommendation of a sentence of community

confinement and home detention to "give this defendant [the] ability to raise her family," against

defendant's criminal history and the circumstances of the offense. See id. at 48. Although having

the authority to impose a sentence that did not include incarceration pursuant to a government

motion for downward departure, the Court declined to do so:

> When I take that [criminal history] into account and the circumstances of this
> offense and what is involved in this offense and the fact that this offense was
> committed while the defendant was still under a sentence [of] probation from the
> offenses that I just mentioned, the court is troubled by the suggestion that the
> appropriate sentence should be, quite frankly, either probation . . . or a sentence
> that the government has suggested which would not involve any incarceration. . .

-7-

Quite frankly, the defendant was put on probation for the welfare and food stamp fraud and while on probation engaged in and committed this offense involving fraud, and I am concerned enough about that, that that is reflected in the sentence that I am about to impose.

Id. at 57-58. The potential disruption to the lives of defendant's children is regrettable, but, as should be evident from the Court's prior comments, it does not ultimately weigh in favor of a sentence not including incarceration, even under an advisory guidelines regime. In other words, the Court now confirms that, in the exercise of its discretion in weighing the sentencing factors under 18 U.S.C. § 3553(a), it would not have imposed a different sentence had it been fully aware of the post-Booker sentencing regime at the time of sentencing or at the time of its denial of defendant's § 2255 motion. The split sentence of 12 months, with the first six months to be served by a term of imprisonment, followed by six months of home detention and three years of supervised release and restitution as ordered, was and remains a sentence "sufficient, but not greater than necessary" (18 U.S.C. § 3553(a)) to comply with those factors. In short, there is nothing to suggest that the Court would impose a sentence that does not include incarceration or a reduced sentence of shorter duration than the expected length of the appeal process. Thus, defendant fails to meet this requirement for release pending appeal under 18 U.S.C. § 3143(b)(1)(B).

The Court pauses to note the awkwardness of the posture of the case. Over three years have passed since the date of the sentencing, due to a bureaucratic glitch. Where the execution of the sentence already has been delayed three years, there seems little to be gained, as a practical matter, from demanding immediate implementation of the sentence, particularly when the merits briefing on appeal has been substantially completed and a decision from the court of appeals may be imminent. However, the Court is obligated to apply the statutory requirements for release

pending appeal, even when factual circumstances arise that make its application awkward. The Court has attempted to do that here.

## CONCLUSION

For the foregoing reasons, the Court denies defendant's motion to stay execution of sentence pending appeal and vacates the temporary stay entered on April 17, 2006. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Date:   May 30, 2006

Copies to:

Robert A. Chapman
Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
Special Proceedings Section
555 Fourth Street, Northwest
Washington, D.C.  20001

Roy W. McCleese III
Elizabeth Gabriel
Steven J. Durham
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, Northwest
Washington, D.C.  20001

Clark U. Fleckinger II
Belli, Weil & Grozbean, P.C.
Rockville Metro Plaza I
111 Rockville Pike, Suite 980
Rockville, Maryland  20850

Sharon Alston


Sondra Rhodes
U.S. Probation Office, Room 2800
U.S. Courthouse
Washington, D.C.  20001

Clerk
U.S. Court of Appeals for the D.C. Circuit
Re: D.C. Cir. No. 03-3064